UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| **Lucas Burgess, et al.,** | : | |
| | : | |
| *Plaintiffs,* | : | |
| | : | |
| **v.** | : | **Case No. 3:10-cv-00024** |
| | : | **Judge Thomas M. Rose** |
| **Sheriff Gene Fischer, et al.,** | : | |
| | : | |
| *Defendants.* | : | |
| | : | |

---

**ENTRY AND ORDER GRANTING IN FULL DEFENDANTS FISCHER, PRINDLE, BOARD OF COMMISSIONERS OF GREENE COUNTY, BARRETT, MCKINNEY, SORTMAN, AND JORDAN'S MOTION FOR SUMMARY JUDGMENT,** (DOC. 87)**, AND FINDING MOOT MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO DEFENDANT'S AFFIRMATIVE DEFENSES.** (DOC. 86).

---

This matter is before the Court for decision on Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Doc. 87. Defendants have moved for summary judgment on all claims filed against them, claims that are based upon a police takedown of Plaintiff during the booking process in the Greene County Jail. Because a jury cannot conceivably find that Defendants used excessive force, failed to intervene, deliberately failed to provide medical care, failed to train, supervise, or discipline, or had enacted unconstitutional policies and procedures, Defendants' motion for summary judgment on Plaintiff's federal claims will be granted.

Because Plaintiff cannot overcome the Ohio statutory immunity afforded Defendants, Defendants' motion for summary judgment on Plaintiff's assault and battery will be granted.

1

Because Plaintiff has not proven extreme and outrageous conduct, Defendants' motion for summary judgment on Plaintiff's intentional infliction of emotional distress claims will be granted. Because Plaintiff's loss of consortium claim is a derivative claim requiring liability on some other will be granted.

Because a jury cannot find that Defendants acted with malice, wanton and willful misconduct, or recklessness, Defendants' motion for summary judgment on Plaintiff's medical malfeasance claim will be granted. Because a jury cannot find that Defendants willfully destroyed evidence to disrupt Plaintiffs' case, Defendants' motion for summary judgment on Plaintiffs' spoliation claim will be granted. Because there was not an unlawful act, Defendants' motion for summary judgment on Plaintiff's civil conspiracy and conspiracy to falsify reports claims will be granted.

## I.      Factual Background

On January 23, 2009, Lucas Burgess was pulled over and arrested by the Ohio State Highway Patrol Trooper David Griffith. Doc. 44, Am. Compl. At ¶ 15. After he was initially pulled over for speeding, Trooper Griffith noticed an odor of alcohol, slurred speech, and an open beer container inside the vehicle. Griffith Stmt. at page 10, ¶¶ 13, 19, 22-23. He was under the influence of alcohol and a prescription drug, Paxil. Burgess Dep. at 14-15. During the stop Trooper Griffith performed field sobriety tests, which Burgess failed. Griffith Stmt. at page 13, ¶ 20, page 16 ¶ 13. Burgess began using of foul language such as calling Trooper Griffith a "f***ing dick." Griffith Video at 21:53:46-21:54:19. Griffith was assisted at the traffic stop by Trooper J.P. Kelly. Kelly Aff. ¶ 3. Burgess was noncompliant with Griffith's orders to be handcuffed, and both Griffith and Kelly had to tackle the resisting Burgess in order to handcuff

him. Kelly Aff. ¶ 5. Inside the cruiser, Burgess continued using profanities directed at Griffith, such as "mother f***ing hypocrite"; why are you doing this mother f***ing shit to me"; and spitting on the cruiser window, saying "spitting on your mother f***ing window, bitch." Griffith Video at 21:55:30, 21:56:00, 21:59:20, 22:02:34, 22:02:50, and 22:04:15. Burgess also threatened physical violence, saying "I ought to whoop your mother f***ing ass" and "you'd better hope I never see you out, buddy. I'm going to break your mother f***ing nose." Griffith Video at 22:00:44, 22:10:25, and 22:10:51.

Once handcuffed, Griffith transported Burgess directly to the Greene County Sheriff's Office. Barrett Aff. ¶ 9-10. Additional officers were in place at the jail because of Burgess' conduct during the stop. Davis Aff. ¶ 4. Deputies Joshua Barrett, Glen McKinney, Naomi Downing, Officer Matthew Sortman, and Nurse Debbie Jordan were present to receive Burgess into the jail. Barrett Aff. ¶¶ 9-10, 16-17. Once inside the jail, Burgess was taken to the pat-down mat to be searched. Barrett Aff. ¶ 9-10. While having his legs searched, Burgess commented to the female officer performing the search, "while you're down there, you want to give me a blow job?" Doc 44, Am. Compl. ¶ 36. After this comment, Burgess was taken to the ground by Deputies Barrett and McKinney to complete the search. Barrett Aff. ¶ 9-11, McKinney Aff. ¶¶ 14, 17. Burgess claims to have gone unconscious at this point. Burgess Dep at 36, 41. This takedown was recorded on the jail's internal surveillance system, but the recording was erased five days later pursuant to the jail's document retention policy. Doc. 87-7, Ex. 4.

Immediately after the takedown, Nurse Jordan performed a physical exam of Burgess. Jordan Aff. ¶ 20. She did not notice any serious condition that required additional medical assistance. Jordan Aff. ¶ 21. She did notice a small cut, bruising and some swelling in the left eye area and small amount of bruising and redness on his wrists and hand. Jordan Aff. ¶ 20. The

booking process was completed and Burgess was placed in a holding cell. Sortman Aff. ¶¶ 10-12. While in the holding cell, Burgess summoned Nurse Jordan multiple times, spitting out a small amount of blood and mentioned some facial and head pain. Burgess Dep. at 40-41. Jordan assessed his injuries, diagnosed him with a contusion, and provided him ibuprofen. Jordan Aff. ¶ 24-26. Burgess told Jordan he did not need any further medical attention. Jordan Aff. ¶ 30.

Shortly after Burgess' release at 2:20 p.m. on January 24, 2009 he was taken to the hospital where he was diagnosed with "displaced left posterior lateral and inferior orbital wall fractures" and "moderate mucosal thickening of the left maxillary sinus from a displaced left anterior medial and posterolateral maxilla wall fractures." Paris Dep. at 94. These injuries required surgery to fixate the fractures so they would heal properly. Doc. 85, Ex. 12.

On January 22, 2010, Burgess filed the present action, doc. 1, which has been amended to assert ten separate counts. Doc. 44.  He alleges violations of 42 U.S.C. § 1983 in the form of: Excessive Use of Force; Denial of Right to Health Care; Violation of Policies and Procedures; Failure to Train, Supervise, and Discipline; and Failure to Intervene. Doc. 44, Am. Compl. 6-12. He also alleges multiple state law claims consisting of: Malice and Gross, Wanton, Willful, and Reckless Negligence; Assault; Battery; Loss of Consortium; Intentional Infliction of Emotional Distress; Conspiracy to Falsify Reports; Spoliation of Evidence; Medical Negligence; and Civil Conspiracy. Doc. 44, Am. Compl. 12-18.

## II.     Standard of Review

The standard of review applicable to motions for summary judgment is established by Federal Rule of Civil Procedure 56 and associated case law.  Rule 56 provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). Alternatively, summary judgment is denied "[i]f there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Hancock v. Dodson*, 958 F.2d 1367, 1374 (6th Cir. 1992) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Thus, summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment has the initial burden of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions and affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Id.*, at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S., at 250 (quoting Fed. R. Civ. P. 56(e)).

Once the burden of production has shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the pleadings" and present some type of evidentiary material in support of its position. *Celotex Corp.*, 477 U.S., at 324.

In determining whether a genuine issue of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in the favor of that party. *Anderson*, 477 U.S., at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe by determining which parties' affiants are more credible. 10A Wright & Miller, Federal Practice and Procedure, § 2726. Rather, credibility determinations must be left to the factfinder. *Id.* Finally, in ruling on a motion for summary judgment, "[a] district court is not…obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989). Instead, a "court is entitled to rely, in determining whether a genuine issue of material fact exists on a particular issue, only upon those portions of the verified pleadings, depositions, answers to interrogatories and admissions on file, together with any affidavits submitted, specifically called to its attention by the parties." *Id.*; Fed. R. Civ. P. 56(c). The analysis now turns to the merits of Defendant's motion for summary judgment.

## III. Analysis

Burgess asserts a myriad of claims. He alleges violations of 42 U.S.C. § 1983 in the form of: Excessive Use of Force; Denial of Right to Health Care; Violation of Policies and Procedures; Failure to Train; and Failure to Intervene. Doc. 44, Am. Compl. 6-12. He also alleges multiple state law claims consisting of: Malice and Gross, Wanton, Willful, and Reckless Negligence; Assault; Battery; Loss of Consortium; Intentional Infliction of Emotional Distress; Conspiracy to Falsify Reports; Spoliation of Evidence; Medical Negligence; and Civil Conspiracy. Doc. 44, Am. Compl. 12-18. Defendants move for summary judgment on all claims. Doc. 87.

**Official Capacity:**

Defendants Sheriff Gene Fischer, Major Eric Prindle, Officers Barrett, McKinney, Sortman, and Nurse Jordan argue the claims brought against them in their official capacities should be viewed as suits against the municipality, and are therefore subject to dismissal. Doc. 87 at 9. The Court agrees. As long as the government entity receives notice and has an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. *Brandon v. Holt*, 469 U.S. 464, 471-472 (1985). It is not a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The present actions seeks damages, therefore the claims against Fischer, Prindle, Barrett, McKinney, Sortman, and Jordan in their official capacities are actually claims against the Board of Commissioners and are dismissed. The claims against Defendants Barrett, McKinney, Sortman, and Jordan in their individual capacities and the claims against the Board of Commissioners remain and will be further discussed below.

**A.      Federal Claims:**

Plaintiff alleges violations of 42 U.S.C. § 1983 in the form of: Excessive Use of Force; Denial of Right to Health Care; Violation of Policies and Procedures; Failure to Train; and Failure to Intervene. Doc. 44, Am. Compl. 6-12. Defendants argue qualified immunity should apply, doc. 87 at 10, 13, while Plaintiffs argue qualified immunity should not apply. Doc. 93 at 5.

**Qualified Immunity Standard:**

The individual defendants argue they are entitled to qualified immunity and move for summary judgment on Burgess' excessive force, failure to provide health care, and failure to intervene claims. Doc 87 at 10, 13. Section 1983 claims are subject to the affirmative defense of qualified immunity which, if applicable, shields individuals against liability. *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). Qualified immunity protects state officials so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Dickerson v. McClellan,* 101 F.3d 1151, 1157 (6th Cir. 1996) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982)). The doctrine balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly, and the need to shield officials from liability when they perform their duties reasonably. *Pearson,* 555 U.S. at 231. The accommodation for reasonable error exists because officials should not always err on the side of caution due to the fear of being sued. *Id.* Qualified immunity includes a two-step analysis: (1) considering the allegations in a light most favorable to the party injured, a constitutional right has been violated; and (2) whether that right was clearly established. *Swiecicki v.Delgado*, 463 F.3d 489, 497 (6th Cir. 2009). It is the plaintiff's burden to show defendants are not entitled to qualified immunity. *Silberstein v. City of Dayton,* 440 F.3d 306, 311 (6th Cir. 2009). Defendants' conduct must be measured on an individual basis. *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010).

**Excessive Use of Force Standard:**

Burgess argues Defendants' use of force in the takedown procedure during the booking process was excessive. Doc. 44, Am. Compl. 6. Under the first step of the qualified immunity

analysis, the Court must consider the allegations in the light most favorable to the plaintiff and determine whether a constitutional right has been violated. *Swiecicki*, 463 F.3d at 497. At the time of the incident at issue, the Fourth Amendment's objective reasonableness standard was not the clearly established standard for police officers during the booking process, it was established June 29, 2010 in *Aldini v. Johnson*, 609 F.3d 858, 866 (6th Cir. 2010). At the time of the incident, the Fourth Amendment's prohibition against unreasonable seizures of the person applied to excessive-force claims that "arise[ ] in the context of an arrest or investigatory stop of a free citizen," *Aldini* at 864, while the Eighth Amendment's ban on cruel and unusual punishment applied to excessive-force claims brought by convicted criminals serving their sentences. *See Whitley v. Albers,* 475 U.S. 312, 318–322 (1986). When neither the Fourth nor the Eighth Amendment serves to protect citizens, prior to *Aldini,* courts have applied the Fourteenth Amendment. *Aldini* at 864 (citing *Lanman v. Hinson,* 529 F.3d 673, 680–81 (6th Cir. 2008)). Accordingly, the Court will apply the Fourteenth Amendment as the appropriate standard. Under the Fourteenth Amendment, only "force employed maliciously and sadistically for the very purpose of causing harm" is actionable. *Claybrook v. Birchwell*, 199 F.3d 350, 359 (6th Cir. 2000).

**Deputies Barrett and McKinney:**

Burgess alleges excessive use of force. Because deputies Barrett and McKinney performed the takedown, the Court will analyze the excessive force claim only with regard to them. Doc 44. The Court will analyze the first step of qualified immunity by considering the allegations in a light most favorable to the party injured, whether a constitutional right has been violated. *Swiecicki*, 463 f.3d at 497. "[T]his usually means adopting ... the plaintiff's version of the facts," *Scott v. Harris,* 550 U.S. 372, 378 (2007), unless that version "is so utterly discredited

by the record that no reasonable jury could have believed him." *Id.* at 380. Here, there is no

videotape[1] or similar evidence in the record to contradict Burgess' testimony. Defendants only

offer witness testimony to oppose Plaintiff's version of the facts, and "credibility determinations,

the weighing of the evidence, and the drawing of legitimate inference from the facts are jury

functions, not those of a judge[.]" *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, (1986).

Burgess and Defendants present conflicting stories of what transpired during the search and

booking process at the jail. Defendants state Burgess was actively resisting the search process,

doc. 87 at 4, while Burgess says he was complying with the officers' orders. Doc. 93 at 8.

Burgess claims he was only "indulging in foul language." Doc. 93 at 8. However, both parties

agree that Burgess said to the female officer performing the search, "while you're down there,

you want to give me a blow job?" Doc 44, Am. Compl. ¶ 46, doc. 87 at 5. All parties agree that

soon after this comment, Deputy McKinney gave the order to take Burgess to the ground. Doc.

87 at 4, 5. Burgess was then physically taken to the ground by Barrett and McKinney to

complete their search. Doc. 87 at 5. The Court expresses no determination on whether Burgess

was actively resisting prior to the takedown, it finds the fact non-determinative. Burgess arrived

at the jail as someone who was initially being co-operative when pulled over, but suddenly

became belligerent, necessitating that he be handcuffed, during which there was a scuffle. This

had put the officers on alert that Burgess had threatened physical violence and could suddenly

become belligerent. Doc. 87 at 3. The only evidence Burgess asserts to prove malice or acting for

the very purpose of causing harm is that the officers reacted to his "blow job" comment. Doc. 93

at 8. Burgess admits to being out of line. Burgess dep. at 35. He admits to indulging in profane

language, doc. 93 at 8, specifically, suggesting the officer performing the search to give him a

---

[1] The Defendants deleted their videotape evidence after 5 days pursuant to their records retention policy. Doc. 87-7, Ex. 4. The Court notes other jurisdictions appear to subscribe to "reasonable" retention policies, however, the Court will not draw adverse inferences from the destruction of the tape.

blow job. Doc. 44, Am. Compl. ¶ 36. Even when viewing the evidence in the light most favorable to the Plaintiff, the Court must conclude that the officers' conduct during the booking process was not malicious or sadistic for the very purpose of causing harm; rather, it was a good faith effort to maintain discipline with an erratic detainee that had recently threatened physical violence, regardless of whether or not he was actively resisting the search. Therefore, the Court finds that the takedown did not involve the excessive use of force under the pre-*Aldini* standard.

The Court now turns to the second inquiry, whether the right at issue was clearly established. *Swiecicki v. Delgado*, 463 F.3d 489, 497 (6th Cir. 2009). Both parties cite authority to support their position, but the Court finds it was not clearly established that police officers are not entitled to use reasonable force on a handcuffed detainee during the booking process in order to maintain discipline. Burgess points the court to *Cox v. Treadway*, 75 F.3d 230 (6th Cir. 1996), arguing that it is unreasonable and unconstitutional for a police officer to use physical force on a person who has been arrested and restrained, who is securely under the control of the police and who is not attempting to escape. Doc. 93 at 7. The *Cox* court invalidated a jury instruction for excessive use of force because it did not go far enough. *Cox* at 234. The court held the requested instruction "should have contained a statement that the arrestee *must* be restrained and must be *completely* under the control of the police." *Id.* (emphasis added). "There is no occasion for the use of any force against a prisoner who quietly submits." *Id.* (quoting *Feemster v. Dehntjer*, 661 F.2d 87, 89 (8th Cir. 1981)). In the present action, Burgess was not completely under the control of the officers. His arrest had progressed from him complying with officer requests to violence on his part, including a physical scuffle with the arresting officer. Doc. 93 at 2. He was verbally abusive on the ride to the police station and he continued his verbal tirade during the search process, culminating in the takedown after Burgess' "blow job" comment to the female police

officer conducting the search. Doc. 87 at 3. Relying on *Cox*, Burgess cannot show that he was completely under Defendants' control, nor was he quietly submitting to the officers' requests, as he admits he was engaging in foul and abusive language. Burgess dep. at 35.

Burgess also directs the Court to *Burden v. Carroll*, 108 F. App'x 291 (6th Cir. 2004), for the proposition that the use of foul language alone does not justify the use of force. *Burden* is distinguishable from the present action. In *Burden*, the police officer arrived at the scene after receiving a phone call from a concerned citizen. *Id.* at 292. In response to the call, when the officer arrived at the scene he engaged in a verbal shouting match with a suspect that was not yet arrested or detained. *Id*. The officer then violently shoved the plaintiff into a jagged wall resulting in injury. *Id*. At the time of Burgess and Burden's arrest, different standards applied to police conduct pre-arrest and post-arrest. *Aldini*, 609 F.3d 858, 864. Here, Burgess was arrested and was taken to the Greene County jail. Doc. 87 at 2-3. Prior to arriving at the jail the troopers and Burgess were engaged in a physical scuffle at the site of the arrest. Doc. 87 at 3. Burgess was verbally abusive on the ride to the police station, using abusive and profane language while threatening physical violence, he continued his verbal tirade during the search process, culminating in the takedown after Burgess' "blow job" comment to the female police officer conducting the search. Doc. 87 at 3-5.

Defendants point the Court to *Thacker v. Lawrence County*, 182 F. App'x 464 (6th Cir. 2006), which held that physical force to a handcuffed detainee after a scuffle was not excessive. In *Thacker*, like the present action, the detainee was handcuffed when the force took place. *Id.* at 467. The detainee was forcefully pushed into a cruiser and suffered a deep cut to his forearm. *Id*. The court found that, "considering the totality of the circumstances," excessive force was not

used. *Id.* at 473. *Cox*, *Thacker*, and *Burden*, do not clearly establish that an officer cannot use force on a detainee in order to maintain discipline.

Because the Defendants did not use excessive force and because it was not clearly established at the time of the incident that the officers were not entitled to use reasonable force to restore discipline to a belligerent detainee, Deputies Barrett and McKinney have not violated Burgess' constitutional right to be free from excessive use of force. Defendants' motion for summary judgment for excessive use of force against Deputies Barrett and McKinney will be granted.

**Failure to Intervene:**

Burgess claims Defendants failed to intervene to prevent the use of excessive force against him. Doc. 44, Am. Compl. at 11. Liability for failure to intervene "[r]equires an officer observe or have "reason to know that excessive force would be or was being used" and have "opportunity and the means to prevent the harm from occurring." *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1999).

Because the Court finds Officers Barrett and McKinney did not use excessive force, Officer Sortman and Nurse Jordan could not intervene, and therefore did not fail to intervene. Defendants' motion for summary judgment for failure to intervene will be granted.

**Denial of Health Care:**

Burgess alleges that Nurse Jordan failed to provide medical treatment. Doc. 44, Am. Compl. at 16. Denial of the right to healthcare has objective and subjective elements: first, a serious medical need arising from an obvious injury; and second, "subjectively perceived facts

from which to infer substantial risk to the prisoner, that [the official] did in fact draw the inference, and that he then disregarded that risk." *Harris v. City of Circleville*, 583 F.3d 356, 368 (6th Cir. 2009). The objective element may be met when the evidence demonstrates a medical need where plaintiff's claims arise from an injury or illness "that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore v. Kalamazoo County,* 390 F.3d 890, 897-900 (6th Cir. 2004). "The subjective component requires an inmate to show that prison officials have a sufficiently culpable state of mind in denying medical care. *Id.* at 895. What is required to state a claim is "obduracy or wantonness - it cannot be predicated on negligence, inadvertence, or good faith error." *Reilly v. Vadlamudi*, 680 F.3d 617, 624 (6th Cir. 2012). Obduracy is defined as "being hardened or harsh in feelings especially against moral influences and stubbornly persistent in wrongdoing. *Jones v. Wertanen,* No. 2:06–CV–299, 2009 WL 1771506, at 2 (W.D. Mich. June, 18, 2009). Wanton is defined as "a reckless disregard for the safety or rights of another person with conscious indifference that an act may result in injury to another." *Id*.

**Nurse Jordan:**

Because Nurse Jordan performed the medical evaluation, the Court will analyze the failure to provide adequate medical treatment solely with regard to her. Doc. 87 at 5-7. To meet the objective element, Burgess offers testimony from the physician who treated him at the hospital, Dr. Paris. Burgess argues because of Dr. Paris' expert testimony the obviousness inquiry is not relevant. Doc. 93 at 13. The Court does not agree. The case law upon which Plaintiff relies to support the proposition that expert testimony satisfies the obviousness inquiry is distinguishable. *Blackmore v. Kalamazoo County*, 390 F.3d 890 (6th Cir. 2004), states that a medical need is objectively serious if it is "one that has been diagnosed by a physician as

mandating treatment." *Id.* at 897. *Blackmore* states that if a physician has diagnosed a medical need, it then cannot be ignored. Here, Burgess was not diagnosed at the prison. Actually, while in his cell he told Nurse Jordan that he did not need any further attention. Burgess dep. at 123, 165-66. The objective element cannot be satisfied by the plaintiff's medical evaluation after he has been released. Paris does not opine that a lay person would easily recognize the necessity for a doctor to attend to Burgess' injury. Plaintiffs rely solely on the expert testimony of Dr. Paris that Jordon's care was below the standard of care to satisfy the objective element and do not present any other facts to support their argument. Doc. 93 at 13-15. Therefore, the objective element of deliberate indifference to a serious medical need is not satisfied.

To prove the subjective element, Burgess again relies upon the expert testimony of Dr. Paris. Doc. 93 at 14. Dr. Paris opines that Nurse Jordan's procedures were inadequate and not as thorough as they should have been; that they were below the standard of care in that situation. Paris dep. at 57-58 ("[T]his examination is way below what an LPN is supposed to do with a patient who appears to be cut and bruised."). However, there is no evidence on the record that shows Nurse Jordan was obdurate wanton, as would be required to satisfy the subjective element. She asked the prisoner directly if he needed additional treatment, which he denied. Jordan Aff. ¶¶ 14-21, 24-26. Furthermore, she provided him ibuprofen to help with his headache. Jordan Aff. ¶ 24-26. It has not been shown that Nurse Jordan inferred substantial risk to the plaintiff and then disregarded it. Because the objective and subjective elements have not been met, Defendants' motion for summary judgment on deliberate indifference to a serious medical need will be granted.

**Policies and Procedures:**

Plaintiffs allege Defendants have adopted unconstitutional policies and procedures. Doc. 44, Am. Compl. at 9-10. To be liable, Plaintiffs must identify an unconstitutional policy or custom or failure to follow a valid policy. *Monell v. Department of Social Services of New York*, 436 U.S. 658, 691 (1978). Because the Court finds the Defendants did not use excessive force, fail to intervene, or fail to provide adequate medical treatment, Defendants' motion for summary judgment on the policies and procedures claim will be granted.

**Failure to Train, Supervise, and Discipline:**

Plaintiffs allege Defendants failed to properly train, supervise, and discipline the officers involved. Doc. 44, Am. Compl. at 11. To succeed on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury. *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). Because the Court finds the Defendants did not use excessive force, fail to intervene, or fail to provide adequate medical treatment, Defendants' motion for summary judgment will be granted.

**B.      State Claims:**

Plaintiffs allege multiple state law claims consisting of: Malice and Gross, Wanton, Willful, and Reckless Negligence; Assault; Battery; Loss of Consortium; Intentional Infliction of Emotional Distress; Conspiracy to Falsify Reports; Spoliation of Evidence; Medical Negligence; and Civil Conspiracy. Doc. 44, Am. Compl. at 12-18. Defendants move for summary judgment on all claims. Doc. 87.

**Malice and Gross, Wanton, Willful, and Reckless Negligence:**

Plaintiffs allege Defendants acted with a malicious purpose, or in a wanton or reckless manner. Doc. 44 Am. Compl. at 12. Ohio provides immunity from suit to state employees of political subdivisions when those employees' activities are connected to governmental or proprietary functions, unless … the employee acted with a malicious purpose, in bad faith, or in a wanton or reckless manner. Ohio Rev. Code § 2744.03(A)(6). Negligence and gross negligence are "insufficient to remove the cloak of immunity." *Radvansky v. City of Olmstead Falls,* 395 F.3d 291, 316 (6th Cir. 2004).

Burgess points to the "blow job" comment as the only fact supporting malice. Doc 93 at 20. Because the Court finds the Defendants did not act maliciously or sadistically for the very purpose of causing harm under Burgess' excessive force claim, the Court also finds that Defendants did not act with malice to overcome Ohio statutory immunity.

"Wilful misconduct is intentionally doing that which is wrong or intentionally failing to do that which should be done. The circumstances must also disclose that the defendant knew or should have known that such conduct would probably cause injury to the plaintiff." *Weber v. City Council, Huber Heights, Ohio,* Case No. 18329, 2001 Ohio App. LEXIS 465 at 7 (Ohio Ct. App. Feb. 9, 2001)**.** "Wanton misconduct must be under such surrounding circumstances and existing conditions that the party doing the act or failing to act must be aware, from his knowledge of such circumstances and conditions, that his conduct will probably result in injury." *Id.* at 8.

To support his argument for willful or wanton misconduct, Burgess argues that a takedown of a detainee will probably result in injury. Doc 93 at 21. However, nothing on the record supports the argument that the takedown is what caused Burgess' injuries or that

takedowns will probably result in injury. Furthermore, Burgess told the jail personnel he was not injured and needed no further treatment. Burgess dep. at 123, 165-66.

Because Defendants are presumed immune under Ohio Revised Code § 2744.03(A)(6) and Burgess has failed to assert facts showing malice, bad faith, or in a wanton or reckless manner, summary judgment will be granted.

**Assault and Battery:**

Plaintiffs allege state law assault and battery against Defendants Barrett, McKinney, and Sortman. Assault requires an intentional threat and reasonable apprehension of harmful or offensive touching and battery is an "intentional, nonconsensual touching." *Hale v. Vance,* 267 F. Supp. 2d 725, 736 (S.D. Ohio 2003). Law enforcement officers are privileged to commit assault and/or battery to affect an arrest unless they use excessive force. *Id.*

Because Plaintiff's claims of excessive force will be dismissed, assault and battery also will be dismissed, therefore Defendants' motion for summary judgment on assault and battery will be granted.

**Loss of Consortium:**

Defendants move for summary judgment on Burgess' loss of consortium claim. Loss of consortium is a derivative claim, "dependent upon the defendant's having committed a legally cognizable tort upon the spouse who suffers bodily injury." *Bowen v. Kil-Kare, Inc.,* 585 N.E.2d 384, 392 (Ohio 1992). Because Plaintiff's claims for assault and battery will be dismissed, defendant's motion for summary judgment on Plaintiff's loss of consortium claim will be granted.

**Intentional Infliction of Emotional Distress:**

Defendants move for summary judgment on plaintiff's state law claim of intentional infliction of emotional distress. Doc. 87. "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress." *Yeager v. Local Union 20, Teamsters, Chauffeurs, Warehousemen, & Helpers of Am.*, 453 N.E.2d 666, 671 (Ohio 1983). The emotional distress suffered because of the "outrageous conduct" must be "severe and debilitating which occurs where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress." *Paugh v. Hanks,* 451 N.E.2d 759, 765 (Ohio 1983). Summary judgment is appropriate when a plaintiff presents no testimony from experts or third parties as to the emotional distress suffered and where the plaintiff does not seek medical or psychological treatment for the alleged injuries. *Crable v. Nestle USA, Inc.*, No. 86746, 2006 WL 1555405 at 9 (Ohio Ct. App. June 8, 2006).

Burgess asserts he and his wife encountered marital troubles since the incident, Burgess dep. p 172, however, he provides no expert testimony supporting his emotional distress nor are there any facts to support he sought treatment for his emotional distress.

Because Defendants' actions were not extreme and outrageous, and because the actions did not cause severe emotional distress to Burgess, Defendants' motion for summary judgment with regards to intentional infliction of emotional distress will be granted.

**Spoliation:**

Burgess asserts a claim of spoliation of evidence. Doc. 44, Am. Compl. at 15. Spoliation of evidence requires proof of "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of

evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages. *Smith v. Howard Johnson Co., Inc.*, 615 N.E.2d 1037, 1038 (Ohio 1993). Defendants assert Burgess cannot prove knowledge on the part of Defendants that litigation existed or was probable nor can Burgess prove that the destruction was designed to disrupt Burgess' case. The Court agrees with Defendants. The videotape of the incident was destroyed pursuant to the jail's document retention policy.[2] Fischer aff. ¶ 13. The present action was not initiated until January 22, 2010, almost one year after the incident occurred on January 23, 2009. Doc. 1. There is no evidence Defendants knew litigation was probable. Furthermore, the tape was erased pursuant to the jail's policy, not to disrupt Burgess' case. Fischer aff. ¶ 13.

Because the videotape was erased pursuant to the document retention policy and not to disrupt Burgess' case, Defendants' motion for summary judgment for Burgess' spoliation claim will be granted.

**Medical Negligence:**

Ohio provides immunity from suit to state employees of political subdivisions when those employees' activities are connected to governmental or proprietary functions, unless … the employee acted with a malicious purpose, in bad faith, or in a wanton or reckless manner. Ohio Rev. Code § 2744.03(A)(6). Negligence and gross negligence are "insufficient to remove the cloak of immunity." *Radvansky v. City of Olmstead Falls,* 395 F.3d 291, 316 (6th Cir. 2004).

Burgess contends that Nurse Jordan acted with malice and in a wanton and willful manner. Doc 93 at 24. Burgess cites to the "blow job" comment to show malice. Doc 93 at 24. Burgess also contends Nurse Jordan allowing him to sit in a jail cell for twelve hours with

---

[2] The Court notes, however, that five days is a short time and a prudent jail would keep the video of a takedown incident for a longer period.

serious injuries shows willful and wanton conduct. Doc. 93 at 24. However, the record shows that Nurse Jordan did attend to Burgess and provided him with pain medication. Doc. 87 at 6. Furthermore, Burgess stated he needed no further medical attention. Burges dep. at 123, 165-66. The most Burgess establishes is negligence, as Dr. Paris opines that Nurse Jordan deviated from the standard of care. Paris dep. at 57. However, under Ohio statutory immunity, Nurse Jordan is immune from a negligence action. Ohio Rev. Code § 2744.03(A)(6).

Because Burgess has failed to show malice, or wanton and willful conduct, and she is immune from a negligence suit, Defendants' motion for summary judgment will be granted.

**Civil Conspiracy and Conspiracy to Falsify Reports:**

Plaintiffs also allege Defendants took part in a civil conspiracy and conspired to falsify reports. Doc. 44 Am. Compl. at 15, 17. Civil conspiracy in Ohio is "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Gosden v. Lewis*, 687 N.E.2d 481, 496 (citing *Kenty v. Transamerica Premium Ins. Co.*, 650 N.E.2d 863, 866 (Ohio 1995). "[A]n underlying unlawful act is required before a civil conspiracy claim can be successful. *Id.* "A civil conspiracy under § 1983 is 'an agreement between two or more persons to injure another by unlawful action.'" *Bazzi v. City of Dearborn,* 658 F.3d 598, 602 (6th Cir. 2011) (quoting *Revis v. Meldrum,* 489 F.3d 273, 290 (6th Cir.2007)).

Because the Court will grant summary judgment on Defendants' excessive force, failure to intervene, failure to provide adequate medical care, assault, battery, intentional infliction of emotional distress, loss of consortium, conspiracy to falsify reports, and spoliation claims, there was no unlawful action in the present action.

To support his falsification claim, Plaintiff points to different information on Burgess'

screening form after completion of the booking process at 3 a.m. from what Jordan described

post takedown. Doc. 93 at 15. Jordan described seeing some blood while the screening form does

not mention the same injuries. Doc. 93 at 15. Plaintiff provides no additional evidence

supporting an intentional falsification of the records or an agreement to falsify records.

Because there is no unlawful action and because the Court finds there was no evidence to

falsify records, Defendants' motion for summary judgment on Plaintiff's civil conspiracy and

conspiracy to falsify records claims will be granted.

## IV.     Conclusion

Because the Defendants did not violate Burgess' constitutional right to be free from

excessive use of force and it was not clearly established at the time of the incident that the

officers were not entitled to use reasonable force to restore discipline to a belligerent detainee,

Defendants' motion for summary judgment for excessive use of force against Deputies Barrett

and McKinney is **GRANTED**. Because Officers Barrett and McKinney did not use excessive

force, Officer Sortman and Nurse Jordan did not fail to intervene, therefore Defendants' motion

for summary judgment for failure to intervene is **GRANTED**. Because Burgess' injuries were

not so obvious that a lay person would easily recognize the need for a doctor's attention and

there is no evidence of obdurate or wanton refusal to provide medical attention, Defendants'

motion for summary judgment on deliberate indifference to a serious medical need is

**GRANTED**. Because there is no evidence of unconstitutional policies or procedures,

Defendants' motion for summary judgment will be **GRANTED**. Because there is no evidence

the Defendants failed to train, discipline, or supervise their officers, Defendants' motion for

summary judgment will be **GRANTED.** Because Burgess has failed to discover facts showing malice, bad faith, or wanton or reckless conduct, Defendants are immune under Ohio Revised Code § 2744.03(A)(6). Because Plaintiff's claims of excessive force will be dismissed, assault and battery also will be dismissed, therefore Defendants' motion for summary judgment on assault and battery is **GRANTED**. Because Plaintiff's claims for assault and battery will be dismissed, defendant's motion for summary judgment on Plaintiff's loss of consortium claim is **GRANTED**. Because Defendants' actions were not extreme and outrageous, and because the actions did not cause severe emotional distress to Burgess, Defendants' motion for summary judgment with regards to intentional infliction of emotional distress is **GRANTED**. Because the videotape was erased pursuant to the document retention policy and not to disrupt Burgess' case, Defendants' motion for summary judgment for Burgess' spoliation claim is **GRANTED**. Because Burgess has failed to show malice, or wanton and willful conduct, and she is immune from a negligence suit, Defendants' motion for summary judgment is **GRANTED**. Because the Court finds no unlawful action, Defendants' motion for summary judgment on Plaintiff's civil conspiracy and conspiracy to falsify reports claim is **GRANTED**. Thus, Defendants' motion for summary judgment, doc. 87, is **GRANTED IN FULL**.[3]

      **DONE** and **ORDERED** in Dayton, Ohio, this Tuesday, September 04, 2012.


      s/Thomas M. Rose

      _____
        THOMAS M. ROSE
        UNITED STATES DISTRICT JUDGE

---

[3] The Court acknowledges the assistance of judicial extern Sean Abbott of the University of Dayton Law School in drafting this opinion.